UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LOUISE LUZZI,

                Plaintiff,

-against-

RICHMOND PRIMARY CARE SPECIALISTS, P.C.,
and MIGUEL A. TIRADO, M.D., PLLC, and
DR. MIGUEL A. TIRADO, an individual,

                Defendants.

------------------------------------------------------------------X

**COMPLAINT**

Docket No.:

Jury Trial Demanded

FILED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y
★ SEP 19 2012 ★
LONG ISLAND OFFICE

GARAUFIS, J.
POHORELSKY, M.

LOUISE LUZZI ("Plaintiff"), by and through her attorneys, The Law Office of BORRELLI & ASSOCIATES, P.L.L.C., alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is a civil action based upon violations committed by the Defendants, RICHMOND PRIMARY CARE SPECIALISTS, P.C. and MIGUEL A. TIRADO, M.D., PLLC, and DR. MIGUEL A. TIRADO, an individual (collectively, hereinafter, "Defendants"), of Plaintiff's rights guaranteed to her by: (i) Section 15(a) of the Fair Labor Standards Acts ("FLSA"); (ii) Section 215 of the New York Labor Law ("Labor Law"); (iii) the New York State Human Rights Law § 290 *et seq.* ("NYSHRL"); (iv) Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); and (v) any other claim(s) that can be inferred from the facts set forth herein.

1

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state and local law claims.

3. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as one or more of the defendants resides within this judicial district.

## PARTIES

4. At all relevant times herein, Plaintiff is a resident of the State of New York, County of Richmond, and is a "person" and an "employee" entitled to protection as defined by Section 15(a) of the FLSA, Section 215 of the Labor Law, the NYSHRL and the NYCHRL.

5. At all relevant times herein, Defendant Richmond Primary Care Specialists, P.C., is a professional corporation with its principal place of business located at 305 Seguine Avenue, Suite 1, Staten Island, New York 10309.

6. At all relevant times herein, Defendant Miguel A. Tirado, M.D., PLLC, is a professional service limited liability company with a principal place of business located at 305 Seguine Avenue, Suite 1, Staten Island, New York 10309.

7. At all relevant times herein, Defendant Dr. Miguel A. Tirado ("Dr. Tirado") is the Chariman or Chief Executive Officer of both above-mentioned entity defendants and was Plaintiff's direct supervisor.

8. At all relevant times herein, the Defendants are "employers" that "employ" four or more "employees" within the meaning of the NYSHRL and NYCHRL, and are "employers"

and "persons" within the meaning of Section 15(a) of the FLSA and Section 215 of the Labor Law.

## PRELIMINARY STATEMENT

9. Throughout Plaintiff's employment with the Defendants, Dr. Tirado severely, pervasively and grotesquely sexually harassed Plaintiff, creating a hostile work environment for her while also *quid pro quo* propositioning her with the promise of employment-related benefits in exchange for sexual favors, all in violation of the NYSHRL and NYCHRL. Moreover, after Plaintiff complained to Dr. Tirado internally about the Defendants' unlawful decision to not pay overtime wages to an employee who had worked in excess of forty hours during certain weeks, Dr. Tirado physically attacked Plaintiff, terminated her employment, and threatened to evict her from the apartment that the Defendants leased to her, all in violation of Section 15(a) of the FLSA and Section 215 of the Labor Law. Finally, after Plaintiff, subsequent to her termination, complained to the Defendants that their practices were in violation of the above-cited laws, the Defendants retaliated by causing Plaintiff's arrest for a reason that was in no manner related to the merits of Plaintiff's case or to the statutory protections and rights that she has invoked herein. This despicable act also constitutes retaliation in violation of the four statutes at issue in this lawsuit.

## BACKGROUND FACTS

10. Dr. Tirado is a primary care physician licensed to practice medicine in New York and New Jersey.

11. In or around October 2007, Dr. Tirado, after splitting with his former partner, took sole ownership and control of Defendant Richmond Primary Care Specialists, P.C. ("Defendant Richmond").

12. Shortly before that time, on or around January 12, 2007, Dr. Tirado also formed Defendant Miguel A. Tirado, M.D., PLLC ("Defendant PLLC"), an entity set up to, *inter alia*, handle and supervise payroll for some of the employees of Defendant Richmond.

13. On or around March 5, 2007, Dr. Tirado, on behalf of Defendant Richmond and Defendant PLLC, hired Plaintiff to be the office manager of Defendant Richmond. Upon her hire and continuing at all times throughout her employment with the Defendants, Defendant PLLC paid Plaintiff's salary for her work performed at Defendant Richmond. Dr. Tirado at all times supervised Plaintiff's work that she completed on behalf of Defendant Richmond and all times supervised the compensation that Defendant PLLC paid to Plaintiff for the work that she completed on behalf of Defendant Richmond.

14. Plaintiff's job duties for the Defendants, as the office manager, consisted of supervising the non-professional staff that worked for Dr. Tirado at Defendant Richmond. Some of these staff members, like Plaintiff, were compensated by Defendant PLLC for their work, while other of these staff members were compensated directly by Defendant Richmond.

15. As compensation to Plaintiff, the Defendants paid to Plaintiff an annual salary, full health benefits, and, beginning in July 2011, leased to Plaintiff an apartment at a below-market rate, which was located above the office. Also, beginning in or around March 2009 and continuing throughout her employment, the Defendants leased and paid for a vehicle for Plaintiff.

16. Dr. Tirado's sexual harassment of Plaintiff started almost immediately, and continued, on a daily basis, throughout Plaintiff's employment, until July 18, 2012, the date of her termination. Plaintiff at all times objected to and opposed Dr. Tirado's harassment of her and made known to him that she merely wanted to work in a respectable, safe, law-abiding

environment. While the below-described comments are extremely graphic in nature and are not repeated lightly herein, their recapitulation in such exact detail is necessary to fully depict the work environment created by Dr. Tirado, on behalf of the Defendants, for Plaintiff.

17. From the commencement of Plaintiff's employment until the end of 2009, Dr. Tirado's sexual harassment of Plaintiff, while becoming more progressively severe or pervasive, started on the milder end of the spectrum. It all began in May 2007 when Dr. Tirado forced Plaintiff and the rest of the staff to submit to an internet "sex test," without telling Plaintiff that she was taking a "sex test." The test required Plaintiff to supply very detailed personal information about her own sex life. When Plaintiff refused to provide that personal information needed to complete the test, she was told that she "failed." Dr. Tirado then embarrassed Plaintiff several times that she had been a "failure" at the "sex test."

18. In late-May 2007, when an attractive female representative from a pharmaceutical company came to the office, Dr. Tirado, in Plaintiff's presence, commented that the representative had a "nice ass," and that based on her "nice ass," he would do business with her.

19. In or around early-June 2007, Dr. Tirado, in Plaintiff's presence, referred to another doctor as a "jerk off."

20. The above three paragraphs are mere examples of the work environment that Dr. Tirado created for Plaintiff and the staff of Defendant Richmond on a daily basis until the end of 2009. During that entire time period, Dr. Tirado frequently asked Plaintiff about her sex life, and also, in Plaintiff's presence, inquired of Plaintiff's female staff about their own sex lives. At all times, Plaintiff made known to Dr. Tirado that such talk, as it pertained to her, made her uncomfortable. Plaintiff also frequently instructed Dr. Tirado that his behavior, as it pertained to the staff, also made her uncomfortable and was highly inappropriate in an office environment.

21. While the work environment described above was deplorable from the commencement of Plaintiff's employment until the end of 2009, it severely worsened beginning in early 2010. At that time, Dr. Tirado began asking Plaintiff and the other female staff members what their favorite sexual positions were. Specifically, Dr. Tirado asked Plaintiff if she preferred to be "on top" or enjoyed "doggie style" better.

22. Still in early 2010, Dr. Tirado called Plaintiff into his office and showed her a picture of an obese naked female with a lit cigarette inserted into her vagina. Plaintiff informed Dr. Tirado that the image was repulsive, that she did not care to see any similar images ever again, and that she was deeply offended by the image.

23. Nonetheless, with full knowledge that it would offend Plaintiff, on other occasions throughout 2010 and 2011, during times when Plaintiff would enter Dr. Tirado's office, Dr. Tirado showed Plaintiff pictures of naked men, always specifically remarking to Plaintiff about the size of their penises. On other occasions, Dr. Tirado showed Plaintiff pictures of naked women. Similarly, on another occasion in 2011, Dr. Tirado called Plaintiff into his office and showed her pictures of one of his patients who, in Dr. Tirado's words, suffered from having a "deformed penis."

24. On another occasion in 2011, in Plaintiff's presence, Dr. Tirado asked a female employee, who Plaintiff supervised, if that employee used to give "lap dances" to men in her former job. Dr. Tirado then, in Plaintiff's presence, inquired of that employee if the men purportedly receiving these lap dances "came" while she was performing such dances. On many other instances throughout 2011 and 2012, Dr. Tirado would send horrifically degrading sexually-charged text messages to this employee. When this employee would bring the text

messages to Plaintiff's attention, Plaintiff would complain to Dr. Tirado that the text messages sent to the employee were highly offensive and inappropriate.

25. On another occasion in 2011, Dr. Tirado, in the presence of several male employees, asked Plaintiff what it was like being a "cougar." As a follow up to that question, Dr. Tirado asked Plaintiff how "experienced" she was with "blow jobs." Not waiting for an answer to his question, Dr. Tirado opined that Plaintiff was probably an "old Electrolux." All of the male employees laughed heartily at Plaintiff after Dr. Tirado made this comment. Plaintiff, humiliated, then immediately left the room.

26. In or around mid-August 2011, Plaintiff walked into Dr. Tirado's office to ask if she could have the day off in order to drive her daughter to college. Dr. Tirado, as a *quid pro quo* proposition to Plaintiff, replied: "get under my desk first, then you can have the day off."

27. On May 23, 2012, Plaintiff arrived at work to find a watch placed on her desk. Upon seeing this watch, Plaintiff texted Dr. Tirado to ask who the watch belonged to. Dr. Tirado replied that the watch belonged to the other employee with whom Dr. Tirado engaged in inappropriate text conversations as described above. After a short exchange, Dr. Tirado wrote to Plaintiff via text that: "If you did f me I would be giving you the watch."

28. On or around June 18, 2012, Dr. Tirado, in the presence of many other male employees, screamed loudly, when Plaintiff entered his office, that later that day a female laboratory representative would be "bringing in coffee and donuts and we're all gonna get blow jobs." Upon hearing this, Plaintiff immediately ran out of Dr. Tirado's office. For the next several days at work, Dr. Tirado, in Plaintiff's presence, repeated this line to Plaintiff when seeing her in the office, specifically repeating the phrase "coffee, donuts and blow jobs."

29. On several other occasions throughout 2011 and 2012, Dr. Tirado would call Plaintiff into his office while he would be watching live, real-time sex scenes on his computer monitor. On these occasions, Dr. Tirado would be viewing these live sex scenes through interactive "skype" technology, meaning that there was a camera set up in Dr. Tirado's office so that while he viewed the live sex scenes on his computer, the individuals who he was watching engage in such sexual activity would simultaneously be able to view him. However, while watching these live sex scenes in this manner on these occasions, Dr. Tirado would place a toy bear in front of the camera on his end so that the individuals engaged in such sexual activity on the other end of the connection could not see his face. Even though Plaintiff complained to Dr. Tirado that she did not wish to be in his office while he was watching such live sex scenes unfold on his computer, Dr. Tirado would frequently and repeatedly engage in such behavior while Plaintiff was in his office.

30. On several other occasions throughout 2011 and 2012, Dr. Tirado would remark to Plaintiff, about Plaintiff's daughter who also worked for Dr. Tirado, that both Plaintiff and Plaintiff's daughter had "very large breasts."

31. The above-described instances are mere examples of the sexually charged work environment in which Dr. Tirado, on behalf of all Defendants, forced Plaintiff to work. Indeed, such sexually-charged comments occurred on an almost daily and routine basis. Plaintiff at all times opposed this work environment to Dr. Tirado, and made known to him how offensive she found the work environment to be.

32. As part of her office manager duties, Plaintiff was also responsible for supervising, with Dr. Tirado's approval, the number of hours worked by the office staff.

33. On or around June 12, 2012, Dr. Tirado laid off approximately 40% of the office staff. Then, in or around late-June to early-July 2012, several other office staff members used their vacation time. Thus, with the office being extremely short staffed at that time, to cover all of the needs of the office, one of the hourly, non-exempt office employees, with Dr. Tirado's knowledge and approval, worked in excess of forty hours per week.

34. On or around July 18, 2012, the day before payroll was to be submitted for processing, Plaintiff and Dr. Tirado met to go over the payroll hours that were about to be submitted. During that conversation, Plaintiff brought up to Dr. Tirado that overtime pay would have to be paid to the employee who had worked in excess of forty hours per week at the premium rate of one and one-half times that worker's normal rate of pay. Dr. Tirado responded by screaming at Plaintiff and telling her that he was not going to submit those hours to payroll and that he was not going to pay overtime pay to anyone. Plaintiff responded that such a practice was illegal, and that as a supervisor, she could be personally liable if Dr. Tirado and the Defendants failed to remit overtime pay in accordance with the law. Dr. Tirado aggressively and angrily responded that he was not going to pay overtime and that if forced to, he would simply deduct the pay from Plaintiff's paycheck. Plaintiff responded that such a practice was illegal. In response, Dr. Tirado physically lunged at Plaintiff and began screaming at her even more loudly. In the midst of his tirade, Dr. Tirado screamed at Plaintiff that she was fired and that she should vacate her apartment immediately. Plaintiff ran from the office up to the safety of her apartment with Dr. Tirado screaming behind her. This was Plaintiff's final day of work.

35. Concomitant with her final day of work, the Defendants stopped making Plaintiff's car payments on her leased vehicle.

36. Less than one week later, on July 24, 2012, Plaintiff sent a letter to Dr. Tirado, as a representative for the Defendants, complaining that the above-described practices were in violation of the FLSA, Labor Law, NYSHRL and NYCHRL.

37. After receiving Plaintiff's letter, the parties engaged in discussions to attempt to resolve this dispute. These discussions formally broke off on September 13, 2012. On the very next day, September 14, 2012, in a blatant act of retaliation for Plaintiff's insistence on asserting her rights under the FLSA, Labor Law, NYSHRL and NYCHRL, Dr. Tirado, on behalf of the Defendants, caused Plaintiff's arrest. In causing Plaintiff's arrest, the Defendants relied on documents that had been in their possession since August 13, 2012. The Defendants' actions were taken to punish Plaintiff for asserting her statutorily-protected rights, and to gain an advantage in this lawsuit that the prior day they learned for certain would be filed.

38. This Complaint followed.

## COUNT I AGAINST DEFENDANTS

### *Retaliation under Section 15(a) of the FLSA*

39. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

40. In sum, Section 15(a) of the FLSA prohibits, *inter alia*, any person from discharging or in any other manner discriminating against an employee for opposing any practice made unlawful by the FLSA.

41. As described above, Plaintiff complained directly to Dr. Tirado, as a representative of the Defendants, that the Defendants' refusal to pay overtime wages to their employees at the premium rate of one and one-half times the employees' normal rate of pay was an unlawful practice.

42. In retaliation for Plaintiff's complaint the Defendants discriminated against Plaintiff by: immediately terminating her employment; physically threatening her; attempting to evict her from her apartment; stopping payment on her leased vehicle; and causing Plaintiff's arrest.

43. The Defendants' retaliatory actions are in direct violation of the FLSA.

44. The Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the FLSA.

## COUNT II AGAINST DEFENDANTS

### *Retaliation under Section 215 of the New York Labor Law*

45. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. In sum, Section 215 of the New York Labor Law prohibits, *inter alia*, any employer from discharging or in any other manner discriminating or retaliating against an employee for opposing any practice made unlawful by the New York Labor Law.

47. As described above, Plaintiff complained directly to Dr. Tirado, as a representative of the Defendants, that the Defendants' refusal to pay overtime wages to their employees at the premium rate of one and one-half times the employees' normal rate of pay was an unlawful practice. Plaintiff further complained to Dr. Tirado that it was an unlawful practice for the Defendants to withhold Plaintiff's wages as punishment for the Defendants having to pay overtime rates to their employees.

48. In retaliation for Plaintiff's complaints the Defendants discriminated against Plaintiff by: immediately terminating her employment; physically threatening her; attempting to

evict her from her apartment; stopping payment on her leased vehicle; and causing Plaintiff's arrest.

49. The Defendants' actions are in direct violation of the New York Labor Law.

50. The Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the New York Labor Law.

## COUNT III AGAINST DEFENDANTS

### *Sexual Harassment and Retaliation under the NYSHRL*

51. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

52. The NYSHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sex/gender, and also prohibits retaliation against individuals who in good faith complain about discriminatory practices to which they have been subjected.

53. Plaintiff is an employee and a qualified person within the meaning of the NYSHRL, while the Defendants are covered employers under the NYSHRL.

54. Defendants, as described above, discriminated against Plaintiff in violation of the NYSHRL by subjecting Plaintiff to a hostile work environment, in the form of sexual harassment that was severe or pervasive, and by *quid pro quo* propositioning her that they would convey employment-related benefits to Plaintiff in exchange for Plaintiff performing sexual favors for Dr. Tirado.

55. As also described above, Defendants retaliated against Plaintiff in violation of the NYSHRL for Plaintiff having in good faith opposed Defendants' discriminatory practices by causing Plaintiff's arrest.

56. Defendant Dr. Miguel A. Tirado aided and abetted the above-described discriminatory and retaliatory practices.

57. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYSHRL and are thereby liable to Plaintiff for all damages recoverable under the NYSHRL.

### COUNT IV AGAINST DEFENDANTS

*Sexual Harassment and Retaliation under the NYCHRL*

58. Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. The NYCHRL prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's sex/gender, and also prohibits retaliation against individuals who in good faith complain about discriminatory practices to which they have been subjected.

60. Plaintiff is an employee and a qualified person within the meaning of the NYCHRL, while the Defendants are covered employers under the NYCHRL.

61. Defendants, as described above, discriminated against Plaintiff in violation of the NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of sexual harassment that was severe or pervasive, and by *quid pro quo* propositioning her that they would convey employment benefits to Plaintiff in exchange for Plaintiff performing sexual favors for Dr. Tirado.

62. As also described above, Defendants retaliated against Plaintiff in violation of the NYCHRL for Plaintiff having in good faith opposed Defendants' discriminatory practices by causing Plaintiff's arrest.

63. Defendant Dr. Miguel A. Tirado aided and abetted the above-described discriminatory and retaliatory practices.

64. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the NYCHRL and are thereby liable to Plaintiff for all damages recoverable under the NYCHRL.

## DEMAND FOR A JURY TRIAL

65. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, demands judgment against the Defendants as follows:

a. Preliminary and permanent injunctions against the Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

b. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State and New York City laws.

c. An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

d. Reinstatement, including restoration of lost fringe benefits;

e. Damages which Plaintiff has sustained as a result of the Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and employee benefits that she would have received but for the Defendants' conduct, for out-of-pocket

losses that Plaintiff has incurred due to the Defendants' conduct, and for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

f.  Punitive damages to the extent authorized by law in an amount commensurate with Defendants' ability and so as to deter future unlawful conduct;

g.  Liquidated damages as recoverable under the FLSA and New York Labor Law;

h.  Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

i.  Pre-judgment and post-judgment interest, as provided by law; and

j.  Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated: Great Neck, New York
       September 19, 2012

                                  Respectfully submitted,
                                  The Law Office of
                                  BORRELLI & ASSOCIATES, P.L.L.C.
                                  *Attorneys for Plaintiff*
                                  1010 Northern Boulevard, Suite 328
                                  Great Neck, NY 11021
                                  Tel. (516) 248 - 5550
                                  Fax. (516) 248 – 6027

By:      _/s/ Alexander T. Coleman_     
                                  ALEXANDER T. COLEMAN (AC 1717)
                                  MICHAEL J. BORRELLI (MB 8533)